# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Ellric Alfred Giroux, II, | ) |
| Plaintiff, | ) Case No. 3:13-cv-62 |
| vs. | ) **REPORT AND RECOMMENDATION** |
| Clair Last Name Unknown, Nurse, | ) |
| Doris Last Name Unknown, Nurse, | ) |
| Cass County, ND, | ) |
| Defendants. | ) |

Plaintiff Ellric Alfred Giroux, II (Giroux), filed suit for an alleged violation of his constitutional rights with regard to the medical treatment he received while in custody at Cass County Jail. (Doc. #17). The defendants moved for summary judgment, claiming Giroux's suit is barred because he failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA). (Doc. #91; Doc #94). Giroux responded to the defendants' motions, (Doc. #96), and the defendants filed replies. (Doc. #97; Doc. #98).

**Summary of Recommendation**

Under the PLRA, prisoners must exhaust administrative remedies before filing claims arising under federal law, and claims filed before exhaustion must be dismissed. Giroux did not exhaust administrative remedies before filing suit. Therefore, it is **RECOMMENDED** that the court find Giroux failed to exhaust administrative remedies, that the motions for summary judgment be **GRANTED**, and that the complaint be **DISMISSED** without prejudice.

**Facts**

During the relevant time period, Giroux was confined at the Cass County Jail in Fargo, North Dakota. (Doc. #17 at 1). Cass County Jail has implemented policies and procedures

relating to inmate grievances. (Doc. #93-3). Under the grievance procedure, an inmate may, as an optional first step, voice a concern to a deputy, and the deputy may take corrective action if the action is within the scope of the deputy's normal responsibilities. (Doc. #93-3 at 1). If the deputy is unable to take corrective action because the action is outside of the deputy's authority, the deputy "will have the inmate initiate a formal grievance." Id. Next, an inmate who wishes to file a formal written grievance must complete and submit a grievance form. Id. A shift supervisor must then review the grievance as soon as possible, initiate an investigation of the grievance, and respond to the inmate in writing within seven days of receiving the grievance. Id. In the event of an emergency, "the Shift Supervisor will respond to the grievance immediately." Id. at 2. Then, if the inmate is dissatisfied with the shift supervisor's response, the inmate must appeal to the jail administrator within fifteen days of receiving the shift supervisor's response. Id. at 1-2. The jail administrator must reply to the inmate within seven days of receiving the appeal. Id. at 3. If the inmate with not satisfied with the jail administrator's response, the inmate may appeal in writing to the Sheriff. Id. Finally, if the inmate remains dissatisfied with the Sheriff's response, the inmate may seek a judicial remedy. Id.

Giroux states that, on a Saturday evening while in his cell, he fell and dislocated his shoulder. (Doc. #17 at 1). Giroux alleges he was then examined by "the on call nurses Clair and Doris[,]" who "called the on call staff doctor[.]" Id. Giroux asserts the doctor advised the nurses that Giroux could wait for treatment until the "in house Jail doctor" arrived on Monday. Id. Giroux claims that, during the weekend, he requested that correctional officers and nurses provide him with assistance with re-setting his shoulder, which they were unable to provide because of jail policies. Id. at 2. Giroux asserts that the jail doctor did not arrive on Monday and

that on Tuesday, Giroux "made such a commotion" that jail staff "agreed that I needed to go to the Emergency Room." Id. After arriving at the emergency room, Giroux states the treating physician ultimately recommended "[e]mergency [s]urgery [d]ue to [p]rolonged [d]islocation" of the shoulder. Id. Giroux asserts surgery was performed the next day. Id.

The day after the incident, Giroux filed two written grievances. (Doc. #93-9). Within seven days of receiving Giroux's grievances, a corporal provided a written response to Giroux, addressing both grievances. (Doc. #93-10). Giroux did not appeal the corporal's response to his grievance, but instead wrote "Agree" and signed the inmate grievance response form he received. (Doc. #93-11).

Giroux subsequently filed the instant action, effectively asserting that the defendants were deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights.[1] (Doc. #17). The defendants moved for summary judgment, claiming the suit should be dismissed because Giroux did not exhaust his administrative remedies as required by the PLRA. (Doc. # 91; Doc. #94). In Giroux's response to the defendants' motions, he implies exhaustion

---

[1]In the initial complaint, Giroux named Cass County Jail and Cass County Jail Medical Staff as defendants, and the case was originally docketed with those defendants. (Doc. #6). However, in Giroux's complaint, he specifically identified "Clair (Last Name Unknown)", "Doris (Last Name Unknown)", and "Dr. Randi Swingen" in the section entitled "Parties", (Doc. #6 at 2), and the court ordered the Clerk of Court to amend the docket to reflect the defendants as named in the "Parties" section of Giroux's complaint, (Doc. #13). Giroux then filed an amended complaint, adding "Cass County" as a defendant. (Doc. #17 at 1). Following a Report and Recommendation, which recommended dismissing Cass County Jail as a defendant, the court ordered that the claim against Cass County Jail be dismissed with prejudice because county jails are not legal entities amenable to suit. (Doc. #18). After Swingen filed a motion to dismiss the claim against her for lack of jurisdiction, (Doc. #64), a subsequent Report and Recommendation recommended that her motion be granted and that the claim against Swingen be dismissed, (Doc. #84). The court adopted that recommendation, granted Swingen's motion, and dismissed the claim against her without prejudice. (Doc. #89).

3

was not required because, at the time he received the response to his grievances, "the [c]onstitutional injury [had] already been inflicted." (Doc. #96 at 1). Giroux also implies exhaustion was not required because Cass County Jail's grievance procedure did not meet the standards of the PLRA. Id. at 2. The defendants replied, asserting no law or facts support Giroux's implied arguments that exhaustion was not required. (Doc. #97 at 1; Doc. #98).

**Summary Judgment Standard**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing the basis for its motion. Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). When the moving party demonstrates that no material facts are in dispute, the nonmoving party then bears the burden of setting forth facts showing a genuine issue for trial. Id. "The court must view all facts and inferences in the light most favorable to the nonmoving party." Id. Summary judgment is appropriate if no reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**Discussion**

The PLRA applies to prisoner complaints arising under federal law and requires prisoners to exhaust their administrative remedies before filing suit. 42 U.S.C. § 1997e(a). If a prisoner does not exhaust administrative remedies before bringing suit, the court must dismiss the suit. Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003). The defendants, as the moving parties, have demonstrated the basis for their summary judgment motions by establishing that Giroux did not exhaust his administrative remedies before filing suit. The burden therefore shifts to Giroux

to set forth facts establishing a genuine issue for trial.

Giroux does not assert that he exhausted his administrative remedies. Instead, Giroux implies exhaustion was not required for two reasons. First, Giroux seemingly argues that the jail's grievance procedure did not meet the standards of the PLRA. (Doc. #96 at 2). In support of this argument, Giroux cites language from the PLRA that has since been repealed. Compare 42 U.S.C. § 1997e (1980), with 42 U.S.C. § 1997e (2013). The PLRA as currently enacted provides, "No action shall be brought with respect to prison conditions under . . . any . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (2013) (emphasis added). With regard to language of the PLRA that is currently in effect, the United States Supreme Court has stated exhaustion "is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter v. Nussle, 534 U.S. 516, 524 (2002) (citations omitted) (internal quotation marks omitted). Giroux's first argument regarding his failure to exhaust does not establish a genuine issue for trial since the PLRA does not require minimal standards for a prison grievance procedure.

Second, Giroux implies he was not required to exhaust his administrative remedies because, by the time he received a response to his grievances, "the [c]onstitutional injury [had] already been inflicted." (Doc. #96 at 1). The United States Supreme Court has held that the exhaustion requirement of the PLRA "applies to all prisoners seeking redress for prison circumstances or occurrences[,] . . . whether they involve general circumstances or particular

5

episodes[.]" Porter, 534 U.S. at 520, 532 (emphasis added).  Both the language of the PLRA and the relevant case law make clear that a prisoner must exhaust administrative remedies before filing suit regardless of whether the alleged constitutional deprivation was isolated or ongoing. Further, case law firmly establishes that exhaustion is required even if a prisoner seeks only money damages.  See, e.g., id. at 524 (stating exhaustion is mandatory even where prisoners seek relief "not available in grievance proceedings, notably money damages"); King v. Iowa Dep't of Corr., 598 F.3d 1051, 1053 (8th Cir. 2010) (holding that relief of money damages is necessarily encompassed in a grievance, and a prisoner who is dissatisfied with the response to a grievance must exhaust administrative remedies before filing suit).  Thus, Giroux's second argument regarding his failure to exhaust does not establish a genuine issue for trial.  Because Giroux has not met his burden of setting forth facts showing a genuine issue for trial, the defendants' motions for summary judgment should be granted.

## Conclusion

Giroux did not exhaust his administrative remedies prior to filing suit, and, in response to the motions for summary judgment, he failed to identify any genuine issue for trial. Accordingly, it is **RECOMMENDED** that:

(1) Defendants' motions for summary judgment be **GRANTED**;

(2) Giroux's suit be **DISMISSED** without prejudice; and

(3) The court find that any appeal would be frivolous, could not be taken in good faith, and may not be taken in forma pauperis.

6

Dated this 17th day of April, 2015.

                                               */s/ Alice R. Senechal*
                                               Alice R. Senechal
                                               United States Magistrate Judge

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **May 1, 2015**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.