## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Ellric Alfred Giroux, II, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:13-cv-62 |
| | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Claire Schwehr, Doris Brown, and | ) |
| Cass County, ND, | ) |
| | ) |
| Defendants. | ) |

Plaintiff Ellric Alfred Giroux, II (Giroux), filed suit for an alleged violation of his constitutional rights while in custody at the Cass County Jail. (Doc. #17).[1] Defendants have moved for summary judgment, (Doc. #129; Doc. #131), asserting that there is no evidence of any county policy, custom, or practice that deprives Giroux of his constitutional rights and that the individual defendants are entitled to qualified immunity.[2]

---

[1] In his initial complaint, Giroux named Cass County Jail and Cass County Jail Medical Staff as defendants, and the case was originally docketed with those defendants. (Doc. #6). However, in Giroux's complaint, he specifically identified "Clair[e] (Last Name Unknown)," "Doris (Last Name Unknown)," and "Dr. Randi Swingen" as "Parties," id. at 2, and the court therefore ordered the Clerk of Court to amend the docket to reflect the defendants as named in the "Parties" section of the complaint, (Doc. #13). Giroux then filed an amended complaint, adding "Cass County" as a defendant. (Doc. #17, p. 1). Following a Report and Recommendation, which recommended dismissing Cass County Jail as a defendant, the court ordered that the claim against Cass County Jail be dismissed with prejudice because county jails are not legal entities amenable to suit. (Doc. #18). After Swingen filed a motion to dismiss the claim against her for lack of jurisdiction, (Doc. #64), a subsequent Report and Recommendation recommended that her motion be granted and that the claim against Swingen be dismissed, (Doc. #84). The court adopted that recommendation, granted Swingen's motion, and dismissed the claim against her without prejudice. (Doc. #89).

[2] In previous motions for summary judgment, the defendants claimed Giroux had not exhausted his administrative remedies as required by the Prison Litigation Reform Act (PLRA). (Doc. #91; Doc. #94). This court issued a report and recommendation,

In his response to the summary judgment motions, Giroux also moved to continue trial. (Doc. #151). Additionally, Giroux's response included a request that defense counsel be fined for allegedly impugning Giroux's character by addressing other instances of Giroux's incarceration. (Doc. #152, p. 1). Subsequently, Giroux filed a motion for discovery, (Doc. #154), which defendants oppose, (Doc. #159; Doc. #160).

**Summary**

This court recommends that the district judge (1) determine that the record contains insufficient evidence of any county policy, custom, or practice that caused

---

stating that the arguments Giroux had asserted regarding his failure to exhaust did not demonstrate a genuine issue for trial and recommending that defendants' motions for summary judgment be granted. (Doc. #113, pp. 5-6).
 The day after the incident in question, Giroux filed two written grievances. (Doc. #93-9). A corporal timely provided a written response to Giroux, addressing both grievances. (Doc. #93-10). Giroux did not appeal the corporal's response; instead, he wrote "Agree" and signed the response form he received. (Doc. #93-11).
 Giroux objected to the report and recommendation and claimed, inter alia, that he was under the influence of narcotic pain medication when he wrote "Agree" on the grievance response form. (Doc. #119). The district judge found that, by alleging he was under the influence of narcotics when he was presented with the grievance response form, Giroux had raised a question regarding his competency to understand the grievance process. (Doc. #126, p. 3). The district judge therefore ordered that Giroux be given an opportunity to appeal the response to his grievance and pursue any additional levels of review necessary to exhaust administrative remedies. Id. Giroux has apparently begun that process. (See Doc. #130, p. 2).
 When the district judge denied defendants' previous motions for summary judgment, that denial was "without prejudice to renewing them after the 30 day deadline [for Giroux to appeal the grievance response] has elapsed or at a later date when the time for completing the full grievance process has elapsed." (Doc. #126, p. 4). The prior motions for summary judgment were based solely on Giroux's failure to exhaust administrative remedies. Although defendants filed the instant summary judgment motions before Giroux's thirty day deadline had lapsed and before completion of the full grievance process, the defendants no longer base their motions on Giroux's failure to exhaust administrative remedies. The instant motions are based only on lack of evidence of an unconstitutional policy, custom, or practice and on qualified immunity.

2

Giroux's alleged constitutional deprivation, (2) conclude that the individual defendants are entitled to qualified immunity, and (3) grant defendants' motions for summary judgment. In light of those recommendations, this court further recommends that the district judge find as moot the motion to continue and the motion for discovery. As to Giroux's request that defense counsel be fined for providing allegedly improper information, this court recommends that the district judge conclude that the inclusion of that information was proper and that Giroux's request be denied.

## Facts

During the relevant time period, Giroux was confined at the Cass County Jail in Fargo, North Dakota. (Doc. #17, p. 1). Giroux claims that, on a Saturday evening while in his cell, he fell and dislocated his shoulder. Id. Giroux alleges he was then examined by "the on call nurses Claire and Doris," who then consulted by telephone with an on-call medical provider. Id. (spelling altered). Giroux asserts the on-call provider advised the nurses that he could wait for treatment until the "in house jail doctor" arrived on Monday. Id. (capitalization altered). Giroux claims that, over the weekend, he requested that correctional officers and nurses provide him with assistance with re-setting his shoulder, which they were unable to provide because of jail policies. Id. at 2. Giroux asserts that the jail doctor did not arrive on Monday and that on Tuesday, Giroux "made such a commotion" that jail staff "agreed that [he] needed to go to the emergency room." Id. (capitalization altered). After arriving at the emergency room, Giroux states that the treating physician ultimately recommended "emergency surgery due to prolonged dislocation" of the shoulder and that surgery was performed the next day. Id. (capitalization altered).

Giroux subsequently filed the instant action, effectively asserting that defendants were deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. Id. at 5. Defendants Claire Schwehr (Schwehr), Doris Brown (Brown), and Cass County, ND (Cass County) have now moved for summary judgment. (Doc. #129; Doc. #131). Giroux responded in opposition to defendants' summary judgment motions, (Doc. #152), and defendants replied, (Doc. #155; Doc. #156).

In his response to the summary judgment motions, Giroux also moves to continue trial, (Doc. #152, p. 14), which is currently scheduled for January 5, 2016, (Doc. #86). Defendants have not responded to that motion, and the time to do so has expired. Giroux's response further requests that the court fine defense counsel for including allegedly improper information in defense counsel's brief as to other occasions of Giroux's incarceration. (Doc. #152, p. 1). Defense counsel responds that Giroux's complete medical history, which includes records of medical treatment provided to Giroux during periods of his prior incarcerations, was included to provide context. (Doc. #156, p. 3).

Giroux filed an additional motion "to submit [i]nterrogatories for the Cass County Defendants to answer for use in [d]iscovery and for use during trial." (Doc. #154, p. 1). Defendants oppose the motion—which they construe as a motion to amend the scheduling order—and argue that Giroux has not made the necessary showing to justify an amendment to the scheduling order at this stage of the proceedings. (Doc. #159; Doc. #160). Giroux has not filed a reply, and the time to do so has expired.

**Summary Judgment Standard**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing the basis for its motion. Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). When the moving party demonstrates that no material facts are in dispute, the nonmoving party then bears the burden of setting forth facts showing a genuine issue for trial. Id. "The court must view all facts and inferences in the light most favorable to the nonmoving party." Id. Summary judgment is appropriate if no reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**Discussion**

In support of their motions for summary judgment, defendants contend that there is no evidence of any county policy, custom, or practice that deprives Giroux of his constitutional rights and that there are no disputed facts bearing on Schwehr or Brown being entitled to qualified immunity. (Doc. #129, p. 2; Doc. #132, p. 2).

**1.   Claim Against Cass County**

"When a plaintiff is seeking to impose section 1983 liability on a local government body, the plaintiff must show that there is an official policy or a widespread custom or practice of unconstitutional conduct that caused the deprivation of a constitutional right." Marksmeier v. Davie, 622 F.3d 896, 902 (8th Cir. 2010) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). In his amended complaint, Giroux states he asked jail officers and nurses for medical care but was told "there is

nothing we can do we are not trained to help you, sorry [j]ail policies." (Doc. #17, p. 2). He alleges that those "policies allow[ed him] to lay helpless for 3 days before he was given proper medical care." (Doc. #17-1, p. 2). Defendants contend that no evidence supports Giroux's claim that any policy, custom, or practice deprived him of his constitutional rights. (Doc. #132, p. 2). Giroux responds that his "right to be free from cruel & unusual punishment . . . and the fact that at the onset of this [a]ction [he] was made to overcome a Report and Recommendation on this very issue" demonstrate that defendants' "argument must fail." (Doc. #152, p. 2).

During the initial review of Giroux's amended complaint, the court liberally construed the pleadings and allowed his claim against Cass County to move forward. (See Doc. #42). However, the proceedings are now at the summary judgment stage, and the parties are required to support their positions with facts—beyond the pleadings—and evidence. Other than the bare the allegations asserted in his pleadings, Giroux has offered no facts or evidence regarding any purported county policy, custom, or practice that caused his alleged constitutional deprivation.

Defendants cite to a grievance response in the record, in which it was noted that "Giroux wanted staff to perform a medical procedure (setting his shoulder) that is not in our scope of medical practice." (Doc. #134, p. 36). The grievance response notes that Giroux's symptoms were logged and that the on-call medical provider "was called as directed by Cass County jail policy on medical emergencies." Id. The grievance response reiterated that "we are not trained to perform medical procedures such as setting of a shoulder and could be held liable for any further damage caused by attempting to set Giroux's shoulder." Id. Defendants also cite to incident reports in the record which

demonstrate that, following the incident in question, nurses attended to Giroux, consulted with the on-call medical provider, and followed the advice (that Giroux not be taken to the emergency room) of the on-call medical provider. (Doc. #132, p. 22).

The record includes no evidence of any county policy, custom, or practice that caused Giroux's alleged constitutional deprivation. Therefore, the court should conclude that defendants have demonstrated that no material facts are in dispute regarding Cass County's liability. Viewing all facts and inferences in the light most favorable to Giroux, the court should conclude that he has not met his burden of showing a genuine issue for trial as to any allegedly unconstitutional county policy, custom, or practice. Thus, with regard to Cass County, the defendants' motion for summary judgment should be granted, and the amended complaint should be dismissed with prejudice.

## 2.   Qualified Immunity from Personal Capacity Claims

Giroux's amended complaint names Schwehr and Brown in their personal capacities only and seeks monetary damages against them. (Doc. #17, p. 4). Defendants argue that Schwehr and Brown are entitled to qualified immunity. (Doc. #130, p. 1; Doc. #132, p. 2). Though Giroux does not address Schwehr's defense of qualified immunity, he claims Brown "is not a government employee or official [and] is not covered by qualified immunity." (Doc. #152, p. 2). Defendants—assuming that Giroux's contention regarding the application of qualified immunity likewise extends to Schwehr—state that Schwehr and Brown were both acting as government officials during the time in question and are indeed shielded from liability. (Doc. #155, p. 2; Doc. #156, p. 8).

Because Giroux is proceeding pro se, the court must liberally construe his qualified immunity argument as extending to Schwehr as well as Brown. See Erickson v.

7

Pardus, 551 U.S. 89, 93 (2007) (stating pro se pleadings must be held to less stringent standards than pleadings drafted by attorneys). Section 1983 addresses only deprivations of rights that are accomplished under color of state law and "does not reach purely private conduct." Dist. of Columbia v. Carter, 409 U.S. 418, 424 (1973). If Schwehr and Brown were not acting under color of state law during the incident at issue, there would be no basis for § 1983 claims against them. Both Schwehr and Brown acknowledge that they were acting under color of state law during the relevant time period, the record evidence demonstrates the same,[3] and the court should proceed with its qualified immunity analysis.

Qualified immunity shields government officials from liability unless (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the conduct at issue. Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Courts have discretion in deciding which prong of the qualified immunity analysis to address first. Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). In deciding the instant motions, the court should first consider whether Giroux has shown that his constitutional rights were violated.

---

[3] Defendants state that Cass County contracted with Fargo Cass Public Health, which employed Schwehr and Brown during the time period at issue, to provide medical services for Cass County Jail inmates. (Doc. #130, p. 2; Doc. #132, p. 3). A relevant portion of that contract is included in the record. (Doc. #93-1). See also West v. Atkins, 487 U.S. 42, 55 (1988) (noting that a medical provider who contracted with a state to provide medical services to inmates at one of that state's prisons acted under color of state law when treating an inmate).

Giroux asserts defendants were deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. (Doc. #17, p. 5). Both an objective element and a subjective element must be established to maintain an Eighth Amendment claim that government officials were deliberately indifferent to an inmate's serious medical needs. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). Failing to treat a medical condition does not constitute an Eighth Amendment violation unless government officials knew that the medical "condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Id. "'The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" Phillips v. Jasper Cnty. Jail, 437 F.3d 791, 795 (8th Cir. 2006) (quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)).

Giroux does not contend that Schwehr and Brown failed to treat him. Rather, he acknowledges that they evaluated him shortly after he suffered the shoulder injury. Giroux also points to evidence in the record, which he notes "shows the extent of the medical care provided to [him] after [h]is fall." (Doc. #152, p. 5; see also Doc. #152-10). He further argues that his "injury was not attend[ed] to properly on [the date of the fall] and [he] was forced to wait . . . for emergent care." (Doc. #152, p. 10) (emphasis added). While Giroux contends that Schwehr and Brown should have referred him to the emergency room sooner, his mere disagreement with the treatment that they provided to him is insufficient to demonstrate deliberate indifference. See Phillips, 437 F.3d at 795.

The court must also consider whether Giroux's constitutional rights were violated by the alleged delay in providing emergency treatment for his injury. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)). Giroux has submitted no medical evidence verifying that a delay in his visit to the emergency room following the incident in question had any adverse effect on his prognosis. Rather, the medical record evidence notes that surgery was indicated not because of delay but because of Giroux's "history of recurrent dislocations and subluxations of the right shoulder. He has been in the emergency room multiple times over the past month-and-a-half." (Doc. #150-8, p. 2) (emphasis added). Nothing in the record establishes that Giroux suffered a detrimental effect from a delay in treatment at the emergency room. Giroux has therefore not established a constitutional violation under the Crowley standard.

A careful review of the record demonstrates insufficient evidence of a violation of Giroux's constitutional rights. Thus, Giroux cannot satisfy the first prong of the qualified immunity analysis. Because both prongs of the qualified immunity analysis must be satisfied in order for exemption from the doctrine to apply, it is unnecessary to consider the second prong. Therefore, the court should find that Schwehr and Brown are entitled to qualified immunity and that they have, as a result, shown that no material facts are in dispute as to their liability. After viewing all facts and inferences in the light most favorable to Giroux, the court should find that he has not met his burden of

demonstrating a genuine issue for trial. Thus, the defendants' motions for summary judgment as to Schwehr and Brown should be granted, and the amended complaint should be dismissed with prejudice.

### 3. Remaining Motions and Request

In his response to defendants' motions for summary judgment, Giroux also moves to continue trial, (Doc. #152, p. 14), which is currently scheduled for January 5, 2016, (Doc. #86), because he expects to be in custody until December 2016, (Doc. #152, p. 14). In light of the recommendation that defendants' motions for summary judgment be granted, the motion to continue should be found moot.

Additionally, Giroux moves "to submit [i]nterrogatories for the Cass County Defendants to answer for use in [d]iscovery and for use during trial." (Doc. #154, p. 1). Again, in light of the recommendation that defendants' motions for summary judgment be granted, the discovery motion should also be found moot.

Finally, Giroux requests that this court order that defense counsel "pay a fine," claiming that a defense brief improperly referenced prior instances of Giroux's incarceration. (Doc. #152, p. 1). This court concludes that defense counsel's inclusion of Giroux's complete medical history, which includes records of medical treatment provided to Giroux during prior periods of incarceration, was provided for context and was not inappropriate. Accordingly, the district judge should deny Giroux's request that defense counsel be fined.

## Conclusion

For the reasons discussed above, it is **RECOMMENDED** that:

(1) Defendants' motions for summary judgment, (Doc. #129; Doc. #131), be **GRANTED**;

(2) Giroux's motion to continue, (Doc. #151), be found **MOOT**;

(3) Giroux's motion for discovery, (Doc. #154), be found **MOOT**;

(4) Giroux's request to fine defense counsel, (Doc. #152, p. 1), be **DENIED**;

(5) Giroux's suit be **DISMISSED** with prejudice; and

(6) The court find that any appeal would be frivolous, could not be taken in good faith, and may not be taken in forma pauperis.

Dated this 4th day of December, 2015.

　　　　　　　　　　　　　　　　　　　/s/ Alice R. Senechal
　　　　　　　　　　　　　　　　　　　Alice R. Senechal
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT

Pursuant to Federal Rule of Civil Procedure Rule 72(a) and (b) and District of North Dakota Civil Local Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **December 18, 2015**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.